[S. F. No. 13865. In Bank.—April 22, 1930.]

MATTHEW RINALDI, Appellant, v. HARRY D. BARASCH et al., Respondents.

E. B. Mering and A. M. More for Appellant.

Joseph G. De Forest for Respondents.

THE COURT.—This is an appeal by the plaintiff from a judgment in favor of the defendant, American Surety Company of New York. Briefly stated, the facts are: The defendants, Barasch and Baldocchi, were real estate brokers and the American Surety Company of New York was the surety upon the bond of Barasch. The brokers inserted an advertisement in an Italian newspaper, offering to sell an

interest in a manufacturing business, the purchaser to work in the business and to receive forty dollars a week and profits, and to invest $1500. Plaintiff, who could not read nor write and had never been to school, according to his own testimony, which appears uncontradicted in the record, called in response to this advertisement. Barasch took him to a "shack" used for a furniture factory and told him that a profitable business was being operated there. Barasch sold plaintiff an interest in this "shack," lot and business and assured him that if the business did not pay, he might have his money returned to him. The testimony of the plaintiff was: "He (Barasch) said, 'This place don't look good, and that is the price, but you see yourself, the house is not worth much, it is an old house, but it make good business, and then you see yourself,' and we went to see, and I didn't believe the business was good—the house was nothing—the money buys a lot and a shack and everything." A man named Stone was the owner of the business and Barasch was selling as his agent.

Plaintiff paid the $1500 and received a receipt therefor. Before receiving a transfer of the property and a day or so after paying his money, plaintiff testified that Barasch told him that the business and property was not a good purchase; that he (Barasch) could not recommend it. Plaintiff, therefore, said he would not buy it, and demanded the return of his money. Barasch would not return it. Upon repeated demands for his money by plaintiff, Barasch insisted upon transferring to plaintiff in lieu of his money a one-sixth interest in the real estate business which was operated and owned by him. Plaintiff protested and said he wanted his money, and Barasch told him if he wanted his money, he could sell the one-sixth interest in the real estate business. Plaintiff insisted upon his money, saying that he knew nothing of the real estate business and could not read nor write. Barasch, however, transferred to plaintiff this interest in the real estate business instead of returning his money as demanded by the plaintiff, and this transfer and the retransfer by plaintiff to Barasch, hereinafter mentioned, is the evidence relied upon in the case to show that the transaction was one between plaintiff and Barasch, individually, and not between plaintiff and said defendant, as agent for another.

Later, plaintiff had a warrant issued for Barasch's arrest and Barasch gave plaintiff $600 in cash and a note for $600, taking back a retransfer of the interest in the real estate business and a release of all liability, conditioned, however, upon payment of the note. The note was never paid, and Barasch did not appear to defend this action brought against him as a joint defendant. Plaintiff sued upon the broker's bond and the trial court found that the transaction involved the sale of the broker's own property and was not a transaction as a real estate broker. Such a finding, in view of the express provisions of the Real Estate Broker's Act, necessitated a judgment exonerating the surety.

■ However, we feel that a broad view of all the facts is opposed to this finding of the trial court. The uncontradicted testimony is that the transaction through which the broker obtained the plaintiff's money was one in which Barasch acted as a broker for Stone; it was the sale of the furniture business, lot, building and goodwill for $1500. The plaintiff explained why he took the instrument transferring him a one-sixth interest in the real estate business, and that testimony is uncontradicted in the record. He shows that Barasch wrongfully retained plaintiff's money and refused to return it after repeated demands and insisted upon transferring him instead this interest in the real estate business. This transfer was made over the plaintiff's protests that he did not want this business; that he could not read nor write; that he wanted his money. Barasch insisted that the way to get the money back was for plaintiff to sell this one-sixth interest in the real estate business. The trial court appropriately characterized the transaction as "bunk, fraud, almost highway robbery." It is plain the parties were dealing on an unequal footing and that the contract for the purchase of the real estate business was forced upon the plaintiff through duress, fraud and against his will. This made it a voidable transaction, and the plaintiff has returned the consideration received, having restored to Barasch the one-sixth interest in the real estate business and elects to avoid the transaction.

That leaves the original transaction standing, whereby the broker received the plaintiff's money in the course of a real estate transaction and has given no consideration therefor,

has retained $900 of the amount received and refuses to account therefor. This clearly brings the matter within the Real Estate Broker's Act and fixes the liability of the defendant surety.

The surety has been compensated for its services and its bond enabled the broker to act as such in a transaction in which the plaintiff was defrauded. Under the circumstances, the foregoing view of the facts seems the only equitable one.

The judgment in favor of the defendant American Surety Company of New York is reversed.